BARTHOLOMEW MOYNAHAN, Respondent, *v.* THE CITY OF NEW YORK, Appellant.

SAME, Respondent, *v.* SAME, Appellant.

Crimes — trial of defendant charged with murder — stenographer's minutes — power of Supreme Court justice to order transcripts of minutes — power of district attorney to order same — stenographer cannot recover for transcripts of minutes furnished upon his own motion, and without request, to the county clerk — what fees may be recovered by stenographer for transcripts lawfully furnished.

1. Section 35 of the General Construction Law (Cons. Laws. ch. 22) only codifies and applies to particular situations the general rule of construction that a statute, if possible, is to be so construed as to give effect to what appears to have been the true intent of the legislature, and that the primary meaning of words may be enlarged or varied to accomplish this purpose. The provision therein that " words in the singular number include the plural and in the plural include the singular " does not mean that always and under all circumstances a word in the singular has a plural meaning, but that, if what otherwise appears to be a fair and reasonable construction requires such enlarged meaning of the word, it will be adopted.

2. The power of a district attorney under section 86 of the Code of Civil Procedure, as it stood in 1904, to order transcripts of minutes to be furnished from day to day in the course of a criminal trial, was limited by the statute which authorized him to require " a copy " which should be a county charge.

3. A justice of the Supreme Court presiding at a trial lasting for several days, and involving a serious criminal charge, has the inherent power at public expense to order a copy of the stenographer's minutes when requisite to enable him properly to discharge the duties imposed upon him.

4. A stenographer was not entitled, either under section 485 of the Code of Criminal Procedure or chapter 135 of the Laws of 1860, as they stood in 1904, to furnish, and recover for furnishing, upon his own motion and without any request, a transcript of his minutes on a criminal trial to be filed with the county clerk.

5. Where a copy of the stenographer's minutes was furnished defendant's counsel on the trial and no question is made as to the liability therefor, the county is not chargeable beyond the statutory fees although the copy was furnished by order of the presiding judge and he certified to the bill at double rates.

*Moynahan* v. *City of New York*, 140 App. Div. 911, modified.

(Argued March 8, 1912; decided April 9, 1912.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered November 2, 1910, affirming a judgment in favor of plaintiff entered upon a verdict directed by the court.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Archibald R. Watson*, Corporation Counsel (*Clarence L. Barber* and *Terence Farley* of counsel), for appellant. There is no statutory warrant for any of the three copies included in the verdict. (*Baker* v. *City of New York*, 56 App. Div. 350; *People* v. *Heiselbetz*, 30 App. Div. 199; *People ex rel. Hennessy* v. *Coler*, 65 App. Div. 217.) The recovery of double fees for the copy furnished to the attorney for the accused is wholly without legal justification. (Code Civ. Pro. § 3311; L. 1892, ch. 299.)

*L. Laflin Kellogg* and *William K. Hartpence* for respondent. The plaintiff should recover the amount remaining unpaid for furnishing two copies of the stenographer's minutes under the written order of the district attorney, from day to day during the course of the trial at the rate agreed upon between the parties. (*People ex rel. Gardenier* v. *Supervisors*, 134 N. Y. 1; *People ex rel. Acritelli* v. *Grout*, 87 App. Div. 193; *People ex rel. Hamilton* v. *Supervisors*, 35 App. Div. 239; *People ex rel. Tripp* v. *Supervisors*, 50 N. Y. Supp. 16; *People*

*ex rel. Bliss* v. *Supervisors,* 15 N. Y. Supp. 748.) The plaintiff should recover for the copy of the stenographer's minutes furnished by him and filed with the clerk of the court. (Code Civ. Pro. § 3311; Code Crim. Pro. § 485; L. 1860, ch. 135.) The plaintiff was entitled to recover for the copy of the minutes furnished by him from day to day during the course of the trial under the order of the trial justice upon certification of the bill by said justice. (Code Civ. Pro. § 85; *People ex rel. Allison* v. *Bd. of Education,* 26 App. Div. 208; *People* v. *Willett,* 3 N. Y. Cr. Rep. 54.)

HISCOCK, J. This action was brought to recover plaintiff's fees as an official stenographer in one of the parts of the Supreme Court of the city of New York for transcribing and furnishing from day to day several copies of his stenographic notes taken on the trial of one Totterman, who was charged with and convicted of the crime of murder in the first degree. The trial took place and the transcripts consequently were furnished during the year 1904.

In his complaint as originally served plaintiff sought to recover for two transcripts of the minutes furnished on the order of the district attorney and delivered, one to such official and one to the justice presiding at the trial; for one transcript transmitted to the governor and for a fourth one furnished on the order of the justice presiding to the attorney for the defendant. The sum sought to be recovered was at the statutory rate of ten cents per folio for each transcript (section 3311 of the Code of Civil Procedure), except in the cases of one of the transcripts ordered by the district attorney and the one furnished to the defendant's attorney where the claim was made at the rate of twenty cents per folio, on the ground that the district attorney had made a special agreement in his case and the judge had ordered the minutes and certified the bill at such rate in the case of the defendant's transcript.

The defendant by its answer admitted its liability for one transcript furnished to the district attorney at the higher rate of twenty cents per folio, for the transcript furnished to the governor, and for the transcript furnished to defendant's attorney at the statutory rate of ten cents per folio, "if the plaintiff makes no claim for transcript if any furnished to said attorney under the provisions of section 456 of the Code of Criminal Procedure," said section being the one providing that in a case "Where the defendant has been convicted of a crime punishable by death, the stenographer, within ten days after the judgment has been pronounced, shall furnish to the attorney for the defendant, at his request, a copy of the stenographic minutes," such expense to be "a county charge."

On the trial it appeared that the plaintiff had been paid the amount thus admitted to be due for one transcript furnished to the district attorney and also for the transcript furnished to the governor, whereupon, in the place of the cause of action for furnishing said latter transcript there was substituted by consent a new alleged cause of action for another transcript furnished to the county clerk at statutory rates. Thus, when the case was finally submitted, there were left alleged causes of action respectively for a second transcript furnished through the district attorney to the justice, one furnished to the county clerk and one furnished to the defendant's attorney, the claim in the latter case being at a special rate of double the fees allowed by the statute. At the close of the evidence the defendant moved for a nonsuit, and this being denied the plaintiff moved for the direction of a verdict, which motion was granted, allowing the full amount claimed by him, with interest. Although the affirmance of the judgment by the Appellate Division was unanimous it is not contended by the plaintiff that this action is not appealable to this court under the provision of section 191, subdivision 2, Code of Civil Procedure, and, therefore, we

shall assume without consideration that an appeal does lie, and we, therefore, come to a consideration of plaintiff's right to furnish the three transcripts in question at the amounts claimed at the expense of the defendant.

Under the form which the submission of the case to the trial justice took place, the latter was justified in finding that the district attorney did order of the plaintiff two transcripts of the minutes to be furnished from day to day during the trial, one of them for and at the request of the presiding justice, and that such transcripts were in fact furnished from day to day and delivered, one to the district attorney and one to said justice. Any consideration of the alleged special agreement for double fees for one copy is rendered unnecessary by the fact that such extra fees for said copy have been paid and are not included in the recovery in this action.

Plaintiff bases his right to recover for the second copy thus far not paid for on the alleged express authority of the district attorney under section 86 of the Code of Civil Procedure as it then was to order as many transcripts of the minutes as he might deem proper, and also on the supposed inherent power of the district attorney to incur such expenses to be paid by the county as he may deem essential to the proper administration of his office.

I should agree with the claim of inherent power of a district attorney to incur such expenses as might result from ordering two or more transcripts of the minutes in an important criminal trial if he deemed it essential, if there had been no statutory provision regulating the matter. But when a statutory provision was adopted prescribing the powers of the district attorney with reference to this particular subject, I think it must be regarded as exclusive and as supplanting the inherent and general powers which he might otherwise have possessed.

Thus we come to a construction of the provision of the Code which touches this subject. Section 86, as it was written at the time, provided: '' Each stenographer, spe-

cified in this act, must likewise, upon request, furnish, with all reasonable diligence, to the defendant in a criminal cause   *   *   *   in which he has attended the trial or hearing, a copy, written out at length from his stenographic notes, of the testimony and proceedings   *   *   * upon payment, by the person requiring the same, of the fees allowed by law. If the district attorney, or the attorney-general requires such a copy, in a criminal cause, the stenographer is entitled to his fees therefor   *   *   *   which shall be a county charge, and must be paid   *   *   *   like other county charges."

The learned counsel for the respondent calls our attention to section 35 of the General Construction Law, which reads, " Words in the singular number include the plural and in the plural include the singular," and therefrom argues that when this statute in effect permitted the district attorney at the public expense to order " a copy " of the minutes it meant that he might order as many copies as he deemed sufficient. We disagree with him, however, as to the effect of the statute. It only codifies and applies to particular situations the general rule of construction that a statute, if possible, is to be so construed as to give effect to what appears to have been the true intent of the legislature, and that the primary meaning of words may be enlarged or varied to accomplish this purpose. (*People* v. *Eickemeyer, etc., Co.*, 39 Abb. [N. C.] 233, 236; *Garrigus* v. *Board of Commissioners*, 39 Ind. 66; *Hogan* v. *State*, 36 Wis. 226, 247.)

Obviously the statute does not mean that always and under all circumstances a word in the singular has a plural meaning, but that, if what otherwise appears to be a fair and reasonable construction requires such enlarged meaning of the word, it will be adopted. Can we fairly say the legislature intended in using the words " a copy " to give the district attorney the power to order two or a dozen transcripts if he deemed it wise ? I think not. This case illustrates that transcripts of stenographic

minutes furnished on a trial involve much unusual labor and are necessarily expensive. When furnished as a public charge they may easily grow into an aggregate expense of no slight dimensions. At the time in question the statutes concededly directed the supply of a copy to the district attorney, the attorney-general if required, the governor and the defendant in case of conviction of a crime punishable by death. They now also provide for furnishing a copy to the justice presiding at a criminal trial and to the clerk of the court in cases where the defendant has been convicted of a crime not punishable by death and an appeal has been taken. In each case the same language, " a copy," is used and if these words are to be construed in the plural in one case and as authorizing the district attorney to order two or more copies, I see no reason why they must not be similarly construed at least in the cases of the governor, the judge and the attorney-general, and possibly in the case of the defendant. This would open the way to too much public expense and it is more reasonable and safer to construe the statute as meaning exactly what it says, even if this does furnish a little less convenience for the benefit of the persons designated by it.

In my opinion, however, there is another theory under which plaintiff is entitled to sustain the judgment which has been awarded him for this second copy. It appears that while directly ordered by the district attorney this was really at the request of and for the use of the justice presiding at the trial to whom it was delivered and by whom a formal order was made requiring the plaintiff to furnish a transcript from day to day. I think that a justice of the Supreme Court presiding at a trial lasting for several days and involving a criminal charge of the most serious character which could be brought before him should be held to have the inherent power at public expense to order a copy of the stenographer's minutes when requisite to enable him properly to discharge the

duties imposed upon him. The usefulness of, if not necessity for, such minutes under such circumstances is so obvious as scarcely to endure discussion. Every interest both public and private demands that he shall so conduct the trial as to secure justice and avoid a mistrial. This in turn requires that he shall either carry in his mind or have before him a full record of every thing which transpires from day to day in order that he may with correctness rule on evidence and instruct the jury. Of course he cannot be expected to memorize all the evidence and he cannot take complete notes in long hand unless he holds back the progress of the trial. Therefore he must of necessity resort to a transcript of the stenographer's minutes, and it would seem to be a case of sacrificing important ends by magnifying minor objections to hold that he may not guard against a mistrial and large public expense by procuring at comparatively small expense a transcript of the evidence. There is little authority bearing with reasonable directness on the question and this I attribute to the fact that the power, not infrequently exercised I believe, to do as was done in the case under review has not been questioned.

The general rule is that the higher courts have such inherent powers as are necessary to the proper discharge of their duties and the exercise of their jurisdiction. (Works on Courts, pp. 173, 174.) Thus they have the inherent power to appoint and remove necessary employees and assistants of the court. (*Matter of Janitor of the Supreme Court,* 35 Wis. 410.) Also a similar power to replace records when lost or destroyed by accident, negligence or wantonness, which must involve public expense. (*Red River, etc., R. R. Co.* v. *Sture,* 32 Minn. 95, 100.)

In *Huff* v. *Knapp* (3 Sandf. 299; affd., 5 N. Y. 65) it was held that the Marine Court of the city of New York did not have the inherent power to appoint a crier at public expense because it was not strictly and broadly a court

of record, but it was fairly assumed in the opinion of both courts that a court of record would have such inherent power.    (5 N. Y. 66, 69.)

In *People* v. *Willett* (3 N. Y. Cr. Rep. 54) it was held that the court had the inherent power as a means of securing a proper defense to one accused of a criminal charge to direct a copy of the stenographer's minutes to be supplied at public expense, and Judge Westbrook, who wrote the opinion, stated that it met the approval of Judge Peckham, before whom the case was tried.

In *People* v. *Grout* (75 N. Y. Supp. 290) the latter case was cited with approval.

There is in my opinion no statutory provision which by regulating the subject excludes the exercise of this inherent power as we have held to be the case with district attorneys.

Section 85 of the Code of Civil Procedure at the time provided: "Each stenographer, specified in this act, must, upon request, furnish, with all reasonable diligence and without charge, to the judge holding a term or sitting, which he has attended, a copy written out at length from his stenographic notes, of the testimony and proceedings, or a part thereof, upon a trial or hearing, at that term or sitting. But this section does not affect a provision of law, authorizing the judge to direct a party or the parties to an action or special proceeding, or the county treasurer, to pay the stenographer's fees for such a copy."

If we assume that this section relates to the stenographer's minutes on a criminal trial, it is not fairly applicable to a case where a stenographer is required to furnish a transcript from day to day. It provides that he shall furnish a transcript "with all reasonable diligence" to a judge holding a term which he "has" attended. This covers an instance where the stenographer at his reasonable convenience and under ordinary circumstances after a case has been closed, writes out his

minutes and furnishes a transcript thereof, and it should not be held to require a stenographer to furnish without compensation a daily copy under a much greater strain and at a much larger expense than would be incident to writing out minutes at his leisure. Therefore, if a judge presiding at a trial felt it necessary to have a transcript from day to day a stenographer would be entitled to reasonable compensation because of the greater work and greater expense incurred in providing such copy.

As indicating public appreciation of the necessity liable to arise for possession from day to day of a transcript of the evidence by the presiding judge in a criminal case, it is to be noted that the statute now removes any question concerning his right thereto by providing that the same shall be supplied at public expense.

Therefore, I reach the conclusion that on this ground the plaintiff was authorized to furnish and entitled to recover for the second transcript furnished for the use of the presiding justice.

I do not think that the plaintiff was entitled to furnish and recover for furnishing a transcript of his minutes to be filed with the county clerk.

His counsel argues that because section 485 of the Code of Criminal Procedure, as it then was, required the clerk to make up a judgment roll which should include amongst other things " a copy of the minutes of the trial," it was to be implied that he should be furnished with a transcript of the evidence. But this construction of the statute is erroneous. The copy of the minutes of the trial there referred to, at least in the case of murder in the first degree, did not mean a transcript of the evidence, but a copy of other records which the clerk of the court was required to keep. A transcript of the evidence so far as material for the purposes of an appeal was provided for by the requirement that the defendant's counsel should be furnished with a copy of the minutes (section 456), and the provision for a case on appeal (section

458), and the provision that the clerk when the judgment was of death upon the settling and filing of the case should prepare and print copies of the judgment roll which should include the case (section 485).

Authority is also sought for this copy in chapter 135 of the Laws of 1860, which at the time provided: "It shall be the duty of the district attorneys of the several counties, within thirty days after the close of any term of the court at which criminals are tried, to file in the county clerk's office full and correct minutes, or a copy thereof, of the evidence taken on the trial of such criminals as have been convicted at said term." This statute has now been repealed. If we should construe it as having authorized a district attorney to order at public expense a complete and extra transcript of the stenographic minutes of every criminal trial at which the defendant had been convicted, it is apparent that this interpretation would have permitted the public to be burdened with an enormous and oftentimes useless expense. The legislature did not contemplate such a result. At the time the statute was passed there was no general provision for stenographic reports of trials by official stenographers and necessarily no requirement that such minutes should be preserved, and, therefore, it was entirely appropriate to require a district attorney to file minutes for use on an appeal or otherwise. But aside from this that statute imposed a requirement on the district attorney and did not authorize a stenographer on his own motion and without any request to supply transcripts of his minutes to a county clerk. Compliance with the statute could be no concern of his until action by him under it was required by the proper authority. Whatever demand there may have been for such a statute is now satisfied by section 485 of the Code of Criminal Procedure. I, therefore, conclude that the plaintiff was not entitled to recover for this transcript.

I next and lastly consider the copy of the minutes

which was furnished to the defendant in the criminial trial.

Section 456 of the Criminal Code, as has already been stated, required the stenographer within ten days after judgment had been pronounced to furnish to the attorney for the defendant at his request a copy of the stenographic notes of the trial, the expense to be. a county charge. While, as a matter of fact, this transcript was furnished during the trial and before judgment had been pronounced, the defendant by its answer waived this feature to the extent of admitting its liability for this transcript at the statutory rates provided no claim should be made for another later transcript under the provisions of said section. From the record and the briefs, we are entitled to assume that no other claim is made under said section than for this transcript and, therefore, the only question left to consider is whether the plaintiff was entitled to recover at double rates for said transcript, the judgment having been at the rate of twenty cents per folio. I find no justification for such increased charge. Plaintiff's counsel seems to rely on the order of the justice presiding requiring a transcript of the minutes to be furnished from day to day and on the certificate of said justice to the bill for this item. These in my opinion did not authorize such double charge. The court did not have the authority by its order and certificate to overrule the statutory provisions bearing on this subject. The only theory on which it is attempted to sustain the double charge is that the transcript was furnished from day to day and, therefore, reasonably called for greater compensation. But the statute did not permit this. It only permitted furnishing a transcript within ten days after judgment when the defendant has been convicted, etc. While very possibly a stenographer should be allowed to recover for a copy of minutes supplied during the trial to the defendant's counsel, if the conditions permitting such transcript subsequently arose, the very fact that he has

thus supplied them out of order cannot be made the basis for a double charge.   If we pass this fact that this copy was supplied under the stress of a day-by-day requirement, no evidence is found justifying a certificate or recovery for more than the statutory fees.

Moreover, I fail to see where there is anything which answers the purpose of an agreement, assuming that one could be made in this instance, to pay more than the statutory fees, as required by section 3311 of the Code.

In accordance with these views the judgment appealed from must be reversed and a new trial granted, unless plaintiff consents to its modification and reduction by the sum of $354.40 principal and $126.74 interest, making in the aggregate the sum of $481.14, in which case judgment as reduced is affirmed, without costs in this court to either party.

WILLARD BARTLETT, J. (dissenting in part).   I dissent from the conclusions reached in the prevailing opinion in these cases so far as they are based on the assertion or assumption that the Supreme Court or any justice thereof possesses or ever has possessed the inherent power to charge the public with the expense of furnishing a transcript or transcripts of the stenographer's minutes of a trial in any case whatsoever.   The official stenographer, however serviceable he may be, was unknown to the trial courts of an early date.   Until a comparatively recent period a bill of exceptions had to be made up from the minutes actually kept with his own hand by the judge or justice presiding upon a trial.   Stenography is a modern innovation in our courts of law.   To say that the power to order the stenographic minutes of a trial inheres in the court is to say that it has always existed, which is contrary to the fact, or that it necessarily grows out of some pre-existing power, which I cannot see and do not concede.   I agree with Judge HISCOCK's conclusions so far as the matter is regulated and limited by statute,

but I deny that, in the absence of legislation, the courts possess any inherent power over this subject.

GRAY, VANN, CHASE and COLLIN, JJ., concur with HISCOCK, J.; CULLEN, Ch. J., concurs with WILLARD BARTLETT, J.

Judgment accordingly.